UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ELSE MARIE ALBERT et al.,

          Plaintiffs,

                                           Case No. 12-11812

v.                                           Honorable Thomas L. Ludington

FAIR ASSOCIATES et al.,

          Defendants.

_____ /

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR
TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF MAY
BE GRANTED AND DISMISSING THE COMPLAINT WITHOUT PREJUDICE**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And when alleging fraud, the complaint "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

The complaint in this case (more precisely, the first amended complaint) is not short. It spans 32 pages (51 with exhibits) and 152 paragraphs. Notwithstanding its length, however, four of its seven counts do not state claims on which relief may be granted. Its fraud allegations in particular lack a sufficient factual basis to plausibly give rise to an entitlement to relief.

Briefly, the plaintiffs allege that in the 1970s three gentlemen — Samuel Fair, Tyrus Hartley, and Richard Socia — persuaded the plaintiffs to purchase partnership interests in three limited partnerships. Organized to explore for oil and gas and extract it once found, the partnerships have been operating since the 1970s. Although the partnerships formed four decades ago, Plaintiffs have not been paid. Two of the three gentlemen are now deceased.

In April 212, Plaintiffs filed a seven-count complaint in this Court. Count one alleges that the defendants committed mail and wire fraud in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968. Count one does not, however, identify fraudulent misrepresentations or omissions made by the defendants, much less identify them with the particularity required under the federal rules.

Rather, as presently pleaded, the foundation of the complaint is that the plaintiffs believed that in exchange for their investment they would receive a "reasonable return" of 100 times their initial investment. *See* First Am. Compl. ¶ 41 ("Representations were made to the 'investors' that the 'Six Well Reinvestment of Production Development Plan' would bring a 'reasonable return' of 100 times your initial investment." (quotation marks omitted)). Yet despite the decades passing, the plaintiffs haven't received it (indeed, they haven't received anything).

Even if the "reasonable return" was enforceable against the defendants as a promise, however, "[f]uture promises are contractual and do not constitute fraud." *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 815–16 (Mich. 1976); *see also Kaminski v. Teledyne Indus., Inc.*, 121 F.3d 708 (6th Cir. 1997). As presently pleaded, the gravamen of the plaintiffs' complaint is a contract claim — not a fraud claim.

Count four of the complaint, sensibly, asserts a breach of contract claim. But it does not identify what the contract's material terms are, nor allege any facts suggesting reciprocal manifestations of intent to be bound by those terms. *Kloian v. Domino's Pizza L.L.C.*, 733 N.W.2d 766, 770 (Mich. Ct. App. 2006) (observing that a valid contract requires "mutual assent or a meeting of the minds on all the essential terms"). To take just one example, while it is

possible that the defendants not only made "representations" regarding a "reasonable return," but promises as well, the complaint does not allege that.  The complaint does not, for example, allege that investors were promised regular distributions of the limited partnerships' earnings (or even irregular distributions, for that matter).  Nor does the complaint identify when investors could expect a return of their capital contributions.  As presently pleaded, the complaint does not state a breach of contract claim on which relief may be granted.

Count five asserts a common law fraud in the inducement claim.  Like count one, however, it does not identify fraudulent misrepresentations or omissions made by the defendants, much less identify them with the particularity required under the federal rules.  This count does not state a claim on which relief may be granted.

Finally, count seven asserts a common law conversion claim.  Specifically, it alleges that the defendants obtained the plaintiffs' money.  But it does not allege that the defendants obtained the money without the plaintiffs' consent.  *Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc.*, 444 N.W.2d 210, 213 (Mich. Ct. App. 1989) (observing that to state a conversion claim the defendant "must have obtained the money without the owner's consent to the creation of a debtor and creditor relationship").  Like counts one, four, and five, count seven does not state a claim on which relief may be granted.

In sum, as presently pleaded, four of the seven counts of the complaint (including the count that this Court's jurisdiction arises under) do not state claims on which relief may be granted.  This is not to suggest that the plaintiffs cannot state such claims — simply that the first amended complaint does not do so.

 Accordingly, the defendants' motion for summary judgment or to dismiss the complaint for not stating a claim will be granted in part and denied in part.  Specifically, the request for

summary judgment will be denied, the request to dismiss the complaint for not stating a claim will be granted, and the first amended complaint will be dismissed without prejudice.  Plaintiffs are cautioned, however, that unless a motion for leave to file an amended complaint is received within 21 days of the entry of this order, count one will be dismissed with prejudice, jurisdiction over the remaining counts will be declined, and the case will be dismissed.

## I

Plaintiffs, 21 in all (at present[1]), are David Rogers, Else-Marie Albert, John  Anderson, Per Axelsen, William Ballard, William Ball, Gary Bauer, Dorothy Braley, Jane Ann Anderson Chandler, Alberta Gamble, Julian R. Gershon, Dennis Goddeyne, Paul Golsch, Jeffrey W. Hartley, Carol Vaglica Hunt, Pete Kondrup, Anne Ledbetter, Teri Salomon, Nina Spiess, Achilles Tarachas, and Susan Laine Valentin.

Defendants, eight in all, are (1) Fair Energies, Inc., a Michigan corporation; (2)  Fair Development (a sole proprietorship or family partnership, paragraph 10 of the first amended complaint alleges); (3) Fair Associates (again, either a sole proprietorship or family partnership); (4) the Estate of Samuel S. Fair, deceased; (5) Natalie P. Fair, Mr. Fair's widow; (6) Terri Fair Reynolds, Mr. Fair's daughter; (7) Tyrus W. Hartley; and (8) the Estate of Richard Socia, deceased.[2]

Defendants move to dismiss the first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Accordingly, for purposes of deciding the motion the following facts from the complaint are assumed to be true.

---

[1] In November 2012, Plaintiffs filed a motion for class certification asserting that "there are approximately 100 members of the [putative] class."  ECF No. 24.  On January 7, 2013, Plaintiffs filed a motion to add additional plaintiffs.  ECF No. 42.  Specifically, Plaintiff seeks to add six identified individuals "and well over 100 additional parties who 'invested' in Defendant(s) oil drilling ventures."

[2] Although count 3 of the first amended complaint seeks an accounting of the limited partnerships and count six seeks an inspection of books and records, the complaint does not name the limited partnerships as defendants.

**A**

About 40 years ago, Samuel Fair, Tyrus Hartley, and Richard Socia began exploring for oil and gas in Michigan. First Am. Compl. ¶ 31. And they found it. *See id.* ¶¶ 31–34. After obtaining the mineral rights in several tracts of land, the gentlemen began extraction operations. *See id.* Specifically, they began operations on five properties that they termed "Fairwells 301, 305, 307," "Olympic Wells 101," and "the Kawkawlin Oil Field." *Id.* ¶¶ 33–34.

**B**

The gentlemen also began soliciting investors for "a share in six (6) wells."[3] First Am. Compl. ¶ 36. Marketing the investments as limited partnership interests, the gentlemen led investors to believe "that as investors, they were acquiring interests as 'limited partners' in (1) Fair-Hartley Kawkawlin Development Limited Partnership (2) Fair Well 104 Limited Partnership and (3) Fair Well Limited Partnership 105." *Id.* ¶ 43.

For each $13,000, an investor would receive a 1 percent "equity interest" in the partnerships. First Am. Compl. ¶ 42. It is not clear from the complaint what else, if anything, prospective investors were promised. As noted, the first amended complaint does not allege that investors were promised regular distributions of the limited partnerships' earnings. Nor does the complaint identify when investors could expect a return of their capital contributions.

In marketing the investment, as noted, Messrs. Fair and Hartley told investors that it was possible that they could earn "a reasonable return of 100 times your initial investment." First Am. Compl. ¶ 41 (quotation marks omitted); *see id.* Ex. B (attaching letter to investors from Messrs. Fair and Hartley). More precisely, Messrs. Fair and Hartley informed prospective investors that "[b]ased on 50,000 barrel wells priced at $33 per barrel the 'Conservative Return'

---

[3] No, the numbers in the complaint don't add up. The complaint alleges that the gentlemen began operations on five wells. They marketed six. This discrepancy is not discussed in the complaint.

would be 30 times your investment.  Based on 100,000 barrel wells the 'Realistic Return' would be 60 times. . . .  Secondary recovery (water flooding) could double this 'Realistic Return' to over 100 times your initial investment."  *Id*. Ex. B.

The gentlemen did not, however, "prepare a prospectus or any printed materials describing the risks and benefits."  First Am. Compl.  ¶ 38.  Likewise, "Plaintiffs do not believe that general and limited partnership documentation was provided to them."  *Id*. ¶ 45.  Indeed, the first amended complaint asserts: "The interest of Plaintiffs individually and in the aggregate have not been reduced to writing."  *Id*. ¶ 81.  Likewise, the complaint alleges, "The interests of Hartley and Socia ha[ve] never been reduced to writing." *Id*. ¶ 83.

Nevertheless, from 1972 through 1979 the gentlemen persuaded at least 66 people to invest — and raised more than $1.5 million.  First Am. Compl. ¶¶ 35, 37, 42.

## C

At some point (the complaint does not specify when), Messrs. Fair and Hartley entered into royalty agreements with "various companies."  First Am. Compl. ¶ 48.  (The first amended complaint does not identify these companies.[4])  Paragraph 48 of the complaint alleges, "Plaintiffs believe[] that in exchange for 'royalties', some or all of the wells were assigned to various companies."  *Id*. ¶ 48.  Instead of distributing the royalties to investors, the first amended complaint continues, "Fair and Hartley assigned the royalties to themselves individually and in an amount unknown."  *Id*. at 49.

---

[4] It is possible, but no more than possible, that one of the "companies" referred to in paragraph 48 of the first amended complaint is Shell Oil.  Although paragraph 48 does not expressly identify which company the gentlemen contracted with, paragraphs 114 and 115 allege "In 1992 Shell Oil drilled five deep wells on the leased land . . . in the Kawkawlin Field.  Sam Fair and Tyrus Hartley shared equally in the gas and oil wells drilled by Shell."

**D**

In 1992, the first amended complaint alleges, Shell Oil drilled five wells on "the Kawkawlin Field."  First Am. Compl. ¶ 114.  Messrs. Fair and Hartley "shared equally in the gas and oil wells drilled by Shell."  *Id*. ¶ 115.  (How much they shared is not specified in the complaint.)

**E**

In 1996, Mr. Hartley filed suit in state court against Messrs. Fair and Socia, Ms. Reynolds, Fair–Hartley Energies, Inc., Fair–Hartley Kawkawlin Development LP, Fair Well 104 LP, and Fair Well 105 LP.  First Am. Compl. ¶¶  50–51; *id*. Ex. C (attaching copy of first amended complaint).  Mr. Hartley's complaint alleged that the defendants were freezing Mr. Hartley out of the business, mismanaging it, and diverting assets.  *See id*. Ex. C.

Plaintiffs were not notified of the pendency of the suit, "consulted," or "advised."  First Am. Compl. ¶ 56.

About a year later, a settlement was reached.  First Am. Compl. ¶ 58.  In October 1997, a judgment was entered.  *See id*. Ex. D (attaching copy of judgment).

In pertinent part, the judgment provides that Mr. Hartley is entitled to $48,599.90 "in liquidation of any past amounts which for any reason were or may have been due him."  *Id*. Ex. D.  But, the judgment cautions: "These past amounts include but are not necessarily limited to any royalties or commissions associated with the entities which are parties to this action."  *Id*.

Moving forward, the judgment continues, Mr. Hartley will be entitled to a share of the revenue of each limited partnership.  *See* First Am. Compl. Ex. D.  First, the judgment provides: "Notwithstanding the fact that Tyrus W. Hartley is no longer a general partner in Fair Hartley Kawkawlin Development Limited Partnership, the amounts payable to him as a general partner

by the terms of the Limited Partnership Agreement dated February 24, 1983 . . . shall continue to be paid to him." Id. (While a copy of the judgment is attached to the first amended complaint, a copy of the limited partnership agreement is not.)

The judgment continues: "Notwithstanding the fact that Tyrus W. Hartley is not and has not been a general partner in Fairwells 104 Limited Partnership or in Fairwells 105 Limited Partnership, the amounts payable to Samuel S. Fair as a general partner by the terms of the Limited Partnership Agreements dated August 23, 1983 . . . shall henceforth be paid 1/2 to Samuel S. Fair and 1/2 to Tyrus Hartley." Id. (Again, copies of these limited partnership are not attached to the first amended complaint.)

No provision was made for Plaintiffs in the judgment.

## F

More than a decade passed. It is not clear from the complaint if Plaintiffs were paid during this time. See First Am. Compl. ¶ 73. More precisely, it is not clear from the allegations in the complaint whether Plaintiffs have been paid anything at any time. The sole assertion regarding payment to Plaintiffs is found in paragraph 73, which alleges: "Plaintiffs have not been reimbursed for their initial investments or any proceeds over and above their initial investments." This could mean Plaintiffs have not received a return of capital, but have received distributions of partnership revenues. Or it could mean that Plaintiffs have received nothing.

## G

Mr. Fair died in 2009. First Am. Compl. ¶ 11. No estate has been opened, no personal representative appointed. Id. ¶ 13.

Mr. Socia died in 2011. See First Am. Compl. ¶ 17. His estate has been opened, and Barbara Socia has been appointed personal representative. Id.

## H

On April 24, 2012, Plaintiffs filed suit in this Court based on federal question and supplemental jurisdiction. ECF No. 1. Specifically, the complaint invoked this Court's federal question jurisdiction based on Defendants' alleged violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968.

On May 8, 2012, Plaintiffs filed their first amended complaint. ECF No. 3. As noted, it raises seven claims: (1) violations of RICO; (2) declaratory judgment; (3) accounting; (4) breach of contract; (5) fraud in the inducement; (6) inspection of books and records; and (7) conversion.

Defendants now move to dismiss or for summary judgment.

## II

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." When alleging fraud, as noted, the complaint "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

Elaborating on the requirements of Rule 9, the Sixth Circuit "require[es] a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (quoting *Ballan v. Upjohn Co.*, 814 F.Supp. 1375, 1385 (W.D. Mich.1992)). Moreover, "allegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Id*.

To survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility," the Supreme Court instructs, "when the [party] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555–56).

A court must accept all factual content in the pleading as true, however, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. . . .  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

### III

### A

Count one of the first amended complaint asserts a civil RICO claim.  As presently pleaded, however, it does not state a claim on which relief may be granted.

RICO, the Supreme Court observes, "imposes criminal and civil liability upon those who engage in certain prohibited activities."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232 (1989) (quotation marks and citations omitted); *see generally* Richard L. Bourgeois, Jr., *Racketeer Influenced and Corrupt Organizations*, 37 Am. Crim. L. Rev. 879 *passim* (2000) (providing overview of RICO).

The civil cause of action is created by 18 U.S.C. § 1964(c), which provides:  "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue in any appropriate United States district court."

Section 1962, in turn, lists "prohibited activities," including owning, operating, or participating in an "enterprise" engaged in "a pattern of racketeering activity" or the "collection of unlawful debt."   § 1962(a)–(c); *see H.J. Inc.*, 492 U.S. at 232 ("Each prohibited activity is defined in 18 U.S.C. § 1962 to include, as one necessary element, proof either of 'a pattern of racketeering activity' or of 'collection of an unlawful debt.' " (quoting § 1962)).

Here, the first amended complaint claims that Defendants engaged in a pattern of racketeering activity.  *See* First Am. Compl. ¶¶ 65–78.  It does not, however, support its assertion with sufficient factual allegations to state a facially plausible claim.

**1**

To maintain a civil RICO action based on a "pattern of racketeering activity," the Sixth Circuit instructs that a plaintiff must establish four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Cent. Distribs. of Beer, Inc. v. Conn*, 5 F.3d 181, 183 (6th Cir. 1993) (citing *Sedima, S.P.R.L. V. Imrex Co.*, 473 U.S. 479, 496 (1985)).  "Enterprise," "pattern," and "racketeering activity" are each defined terms under the statute.

**a**

An "enterprise" means "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." § 1961(4).

Although legitimate "enterprises" were not within Congress's original contemplation, the Court has interpreted "enterprise" to encompass both legitimate and illegitimate enterprises. *United States v. Turkette*, 452 U.S. 576, 588–93 (1981) (discussing legislative history).

**b**

A "pattern," according to the statute, means "at least two acts of racketeering activity" within a 10–year period.  § 1961(5).

As interpreted by the Supreme Court, however, a "pattern" requires more than simply two predicate acts — it requires a plaintiff or prosecutor to "show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis omitted).  Known as the "continuity plus relationship" test, to prove a "pattern" a party must demonstrate both a "relationship" between the predicate acts and "the threat of continuing activity."  *Id.* (quoting 116 Cong. Rec. 18940 (1970) (statement of Sen. McClellan)).

Consequently, "while two acts are necessary, they may not be sufficient."  *Id.* at 237 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985) (Powell, J., dissenting)); *see Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) ("We are especially cautious when the predicate acts involved are mail and wire fraud: it will be the unusual fraud that does not enlist the mails and wires in its service at least twice." (quotation marks and brackets omitted) (quoting *Int'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 154–55 (4th Cir. 1987)).

**c**

Finally, "racketeering activity" is defined by the statute "as including any act 'indictable' under certain enumerated federal criminal statutes, including 18 U.S.C. § 1341, which makes

mail fraud a criminal offense, and 18 U.S.C. § 1343, which makes wire fraud a crime." *Cent. Distribs. of Beer*, 5 F.3d at 183 (quoting § 1961(1)(b); *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1399 (9th Cir. 1986)).

"A civil RICO action does not require that there be a prior criminal conviction for the conduct forming the predicate act; however, the conduct used to support a civil RICO action must be indictable. Thus, the plaintiff must prove each prong of the predicate offense, or 'racketeering activity,' to maintain a civil action under the RICO statute." *Conn*, 5 F.3d at 183–84 (emphasis and citation omitted) (citing *Sedima*, 473 U.S. at 481–82, 488–92); *see generally* Kenneth Mann, *Punitive Civil Sanctions: The Middleground Between Criminal and Civil Law*, 101 Yale L.J. 1795, 1848 (1992) ("Congress converted entire sections of the federal criminal code into civil wrongs as a way to enforce existing substantive law. Under RICO, civil and criminal offenses are identical in every way except procedurally.").

**2**

Here, the first amended complaint contends that Defendants committed both mail and wire fraud, alleging:

> Sometime prior to 1979, the exact date being unknown to the Plaintiffs, the promoters/Defendants devised a scheme and artifice to deprive Plaintiffs of their property/money by convincing Plaintiffs to contribute significant funds towards the venture. Rather than provide dividends or proceeds to the investors/Plaintiffs, Defendant/promoters used said funds to pay dividends to themselves and/or reinvest or convert said funds to their own interest.

> Defendants for the purpose of executing this scheme and artifice to defraud Plaintiffs of their money, used and caused to be used the United States mail and other instrumentalities of interstate commerce.

> Having induced Plaintiff[s] to make the investment, having misappropriated said funds, and failing to pay out gross proceeds to the Plaintiffs, the promoters willfully and fraudulently deceived, cheated, and defrauded Plaintiffs, and in total and complete disregard for the financial investment needs and objectives of Plaintiffs . . . .

> Defendants for the purposes of executing the scheme to defraud Plaintiffs of their money, transmitted and caused to be transmitted communications by means of wire in interstate commerce.  Such interstate communications by wire included, without limitation, telephone calls.

First Am. Compl. ¶¶ 66–68, 77.  These allegations, however, are insufficient to state a claim on which relief may be granted.

"The elements of the offense of mail fraud," the Supreme Court instructs, are: "(1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme." *Pereira v. United States*, 347 U.S. 1, 8 (1954) (citing 18 U.S.C. § 1341).

The elements of wire fraud are similarly straightforward.  "To convict a defendant of wire fraud," the Sixth Circuit explains, "the government must prove (1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property."  *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (quotation marks omitted) (quoting *United States v. Prince,* 214 F.3d 740, 747-48 (6th Cir. 2000)).

The Sixth Circuit cautions, however, that a plaintiff cannot maintain a civil RICO claim based on mail or wire fraud "absent evidence that the defendants made misrepresentations or omissions of material fact to [the plaintiff] and evidence that [the plaintiff] relied on those misrepresentations or omissions to its detriment."  *Conn*, 5 F.3d at 184 (citing *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984)).

The Sixth Circuit further cautions that "to establish a scheme to defraud, which is an essential element of mail [and wire] fraud, there must be proof of misrepresentations or omissions which were reasonably calculated to deceive persons of ordinary prudence and comprehension."  *Blount Fin. Services, Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 153 (6th

Cir. 1987) (quotation marks omitted) (quoting *United States v. Van Dyke,* 605 F.2d 220, 225 (6th Cir. 1979)).

That is, both mail and wire fraud require "specific intent, which means not only that a defendant must knowingly make a material misrepresentation or knowingly omit a material fact, but also that the misrepresentation or omission must have the purpose of inducing the victim of the fraud to part with property or undertake some action that he would not otherwise do absent the misrepresentation or omission." *United States v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003) (quotation marks omitted) (quoting *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998)).

Here, as noted, count one of the first amended complaint asserts that "Defendants devised a scheme and artifice to deprive Plaintiffs of their property/money by convincing Plaintiffs to contribute significant funds towards the venture." First Am. Compl. ¶ 66.

Count one does not, however, identify any facts plausibly suggesting such a scheme. It does not identify what the fraudulent misrepresentations or omissions of material fact were. It does not identify where or when they were made. It does not identify how Plaintiffs relied on those misrepresentations. It does not allege any facts suggesting that Defendants not only made misrepresentations, but knowingly made them with the specific intent to defraud the Plaintiffs.

Rather, count one simply asserts that "Defendants devised a scheme and artifice to deprive Plaintiffs of their property/money." *Id*. This conclusory allegation is not sufficient to state a claim on which relief may be granted.[5]

---

[5] Moreover, Plaintiffs' conclusory allegation is in some tension with allegations elsewhere in the complaint. Plaintiffs acknowledge, for example, that before investing they did not review "any printed materials describing the risks and benefits." *Id*. ¶ 38. They acknowledge that they "do not believe that general and limited partnership documentation was provided to them." *Id*. ¶ 45. Moreover, they assert: "The interest[s] of Plaintiffs individually and in the aggregate have not been reduced to writing" *Id*. ¶ 81. Thus, any misrepresentations must have been oral. Yet no particular oral misrepresentations are identified in the complaint — much less oral misrepresentations made with the specific intent to defraud.

To reiterate, to state a civil RICO claim a complaint must allege that a defendant made repeated misrepresentations or omissions of material fact. It must identify those fraudulent misrepresentations or omissions with particularity, specifying their contents and the time and place that they were made. It must allege facts demonstrating both continuity in the misrepresentations and a relationship between them. And complaint must allege facts plausibly suggesting that the statements or omissions were made not through simple error or unrealistic optimism, but with the specific intent of fraudulently depriving the plaintiff of his or her property. Finally, the complaint must allege facts showing that the plaintiff relied on those misrepresentations or omissions to his or her detriment.

Here, the first amended complaint does not do this. Consequently, it does not state a civil RICO claim on which relief may be granted.

## B

Count two of the first amended complaint seeks a declaratory judgment under Michigan state law. As presently pleaded, this count contains sufficient factual matter to entitle Plaintiffs to seek this form of relief.

Under Michigan law, declaratory judgments are not separate causes of action, but "procedural remedies." *Assoc. Builders & Contractors v. Dir. of Consumer & Indus. Servs. Dir.*, 693 N.W.2d 374, 378 (Mich.2005), *overruled on other grounds by Lansing Sch. Educ. Ass'n v. Lansing Bd. of Educ.*, 487 Mich. 349, 792 N.W.2d 686 (2010). "The purpose," the Michigan Supreme Court explains, "is to enable the parties to obtain an adjudication of their rights before actual injuries or losses have occurred." *Detroit Base Coal. for Human Rights of Handicapped v. Dep't of Soc. Servs.*, 428 N.W.2d 335, 344 (Mich.1988) (citing *Shavers v. Attorney General*, 267 N.W.2d 72 (Mich. 1978)). "The essential requirement," that court further instructs, "is that

plaintiffs plead and prove facts which indicate an adverse interest necessitating the sharpening of the issues raised." *Assoc. Builders*, 693 N.W.2d at 379–80 (2005) (quotation marks omitted) (quoting *Shavers*, 267 N.W.2d 72).

Here, Plaintiffs plead facts suggesting an adversity of interests between themselves and Messrs. Hartley and Socia. Plaintiffs note that their limited partnership interests, as well as those of Messrs. Hartley and Socia, "have not been reduced to writing." First Am. Compl. ¶¶ 81, 83. Plaintiffs seek a judicial declaration maximizing their interests.

Thus, although declaratory judgment is not a separate cause of action, Plaintiffs have alleged sufficient facts to entitle them to seek this form of relief.

### C

Count three seeks an accounting. As presently pleaded, it states a claim on which relief may be granted.

Under Michigan law, a partner may demand an accounting of the partnership affairs under four circumstances: "(a) If he is wrongfully excluded from the partnership business or possession of its property by his copartners, (b) If the right exists under the terms of any agreement, (c) As provided by section 21, (d) Whenever other circumstances render it just and reasonable." Mich. Comp. Laws § 449.22 (formatting omitted).

Section 21 of the Michigan Compiled Laws, in turn, provides: "Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property." § 449.21.

Here, the first amended complaint alleges that Plaintiffs are limited partners in three limited partnerships. First Am. Compl. ¶ 43. It further alleges: "The Fairs and/or Hartley have

comingled funds between the partnerships and the corporation; between the partnerships, corporation and other business ventures; and between the partnerships, corporation and their own personal uses and for the personal uses of members of the Fair and Hartley families." *Id*. ¶ 74. And it alleges that "Fair and Hartley assigned the royalties to themselves individually in equal amounts in a manner unknown and undisclosed to the limited partners." *Id*. ¶ 49.

Accepting these allegations as true, Mr. Hartley must formally account for the use of the partnerships' property and the benefits conferred. (Mr. Fair, deceased, is not subject to the requirements of these sections. *See* Mich. Comp. Laws § 449.21(2).)

The first amended complaint alleges sufficient facts to entitle Plaintiffs to seek an accounting.

## D

Count four asserts a breach of contract claim. As presently pleaded, it does not state a claim on which relief may be granted.

Under Michigan law, a breach of contract claim has three elements: (1) a valid contract; (2) a breach of that contract; and (3) damages. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003) (citing *Platsis v. E.F. Hutton & Co., Inc.*, 642 F.Supp. 1277, 1309 (W.D. Mich. 1986)).

A valid contract, crucially, requires "mutual assent or a meeting of the minds on all the essential terms." *Kloian v. Domino's Pizza L.L.C.*, 733 N.W.2d 766, 770 (Mich. Ct. App. 2006) (citing *Burkhardt v. Bailey*, 680 N.W.2d 453 (Mich. Ct. App. 2004)). Moreover, it requires consideration, "a bargained-for exchange." *Gen. Motors Corp. v. Dep't of Treasury*, 644 N.W.2d 734, 738 (Mich. 2002) (citing *Higgins v. Monroe Evening News*, 272 N.W.2d 537 (Mich. 1978)).

Here, the first amended complaint does not identify the essential terms of the purported contract.  Instead, it alleges: "Plaintiffs and others similarly situated as 'investors' had reason to believe that they would receive at a minimum a reasonable return on their investment."  First Am. Compl. ¶ 94.  This assertion appears premised on the letter that Messrs. Fair and Hartley sent to prospective investors, which told them that it was possible that they could earn "a reasonable return of 100 times your initial investment."  *Id.* ¶ 41 (quotation marks omitted).

The first amended complaint does not, however, allege that the parties agreed that Plaintiffs would invest in exchange for Defendants promising "a reasonable return on their investment."  In paragraph 38, for example, Plaintiffs acknowledge that before investing they did not review "any printed materials describing the risks and benefits."  In paragraph 48, they acknowledge that they "do not believe that general and limited partnership documentation was provided to them."   And in paragraph 81 assert: "The interest[s] of Plaintiffs individually and in the aggregate have not been reduced to writing."  Thus, any agreement must have been oral.

But the terms of this oral agreement are not identified in the first amended complaint. The complaint does not, for example, allege that investors were promised distributions of the limited partnerships' earnings.  It also does not identify when investors could expect a return of their capital contributions.  Put simply, it does not identify the terms of the contract.

Consequently, the allegations of the first amended complaint are insufficient to state a breach of contract claim.

To reiterate, to state a breach of contract claim a complaint must allege facts plausibly suggesting the existence of a valid contract, including the essential terms of that contract.  It must allege facts suggesting mutual assent and a bargained-for exchange.  It must allege a breach of those terms.  And it must allege damages.

Here, the first amended complaint does not do this.  Consequently, it does not state a breach of contract claim on which relief may be granted.

**E**

Count five asserts a claim for fraudulent inducement.  As presently pleaded, however, it does not state a claim on which relief may be granted.

Under Michigan law, fraud generally has six elements.  *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 815–16 (Mich. 1976).  A plaintiff must establish: "(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury."  *Id.* at 816 (quoting *Candler v. Heigho*, 175 N.W. 141, 143 (Mich. 1919)).

"The distinction between fraud in the inducement and other kinds of fraud," the Michigan Court of Appeals explains, "is the same as the distinction . . . between fraud extraneous to the contract and fraud interwoven with the breach of contract.  With respect to the latter kind of fraud, the misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort.  Such fraud is not extraneous to the contractual dispute among the parties, but is instead but another thread in the fabric of the plaintiffs' contract claim."  *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 545 (Mich. Ct. App. 1995) (quoting *Public Serv. Enter. Grp., Inc. v. Phila. Elec. Co.*, 722 F. Supp. 184, 201 (D.N.J. 1989)).

Crucially, as noted, regardless of the type of fraud alleged, the "fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact.

-20-

Future promises are contractual and do not constitute fraud." *Hi-Way Motor*, 247 N.W.2d at 816; *see also Kaminski v. Teledyne Indus., Inc.*, 121 F.3d 708 (6th Cir. 1997) ("To infer fraudulent intent from mere nonperformance . . . would eviscerate the distinction between a breach of contract and fraud.").

Here, count five asserts that Defendants made two fraudulent misstatements.  First, it alleges:

> The promoters, individual Defendants herein, caused to be published to Plaintiffs and other members of the public who were solicited to make cash payments to Defendants certain misrepresentations of fact which these Defendants knew or should have known were untrue or without reasonable factual foundation.  The material misrepresentations as set out in Exhibit A concerning the acreage leased by the promoters/Defendants appear, alternatively, to have already been drilled by promoters/Defendants for their individual profit.

First Am. Comp. ¶ 111.  And second, it alleges: "Exhibit B with the attached map of the leased land states: We have the acreage to drill 40 to 50 wells. . . .  Payout will commence between the 10th and 15th well during the second year using 'Conservative' figures.  The 10th well was not drilled and there has been no Payout."  *Id*. ¶¶ 111.

Neither assertion is sufficient to state a claim for fraud — much less fraudulent inducement.  First, Exhibit A does not concern "acreage leased by Defendants," but the letter of authority appointing Barbara K. Socia as personal representative for the estate of Richard Socia. *See* First Am. Compl. Ex. A.  And nothing in this letter appears fraudulent.

Likewise, even if the reference to Exhibit "A" was a scrivener's error — and Plaintiffs meant Exhibit "B" — the count nevertheless does not state a claim on which relief may be granted.  As noted, fraud must be pleaded with particularity.  Rule 9 requires a "plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting

from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1385 (W.D. Mich.1992)).  Simply alleging that Defendants made "certain misrepresentations of fact which these Defendants knew or should have known were untrue or without reasonable factual foundation" is insufficient.

Likewise, the material representations of Exhibit B are not predicated on existing facts, but future events.  It informs prospective investors, for example, that "[b]ased on 50,000  barrel wells priced at $33 per barrel the 'Conservative Return' would be 30 times your investment. Based on 100,000 barrel wells the 'Realistic Return' would be 60 times. . . .  Secondary recovery (water flooding) could double this 'Realistic Return' to over 100 times your initial investment." First Am. Compl. Ex. B.  As noted, however, "[f]uture promises are contractual and do not constitute fraud." *Hi-Way Motor Co.*, 247 N.W.2d at 815–16.

The second alleged misrepresentation identified in count five — that "[t]he 10th well was not drilled and there has been no Payout" — is likewise not predicated on an existing fact, but a future event.  That is, Plaintiffs allege that in promoting the venture in the 1970s, Defendants represented that they would drill at least 10 wells and that payments would then follow. Plaintiffs further allege that Defendants did not keep their word.  Accepting these allegations as true, count five does not allege a claim for fraud.

To reiterate, to state a fraud claim a complaint must allege with particularity facts plausibly suggesting that a defendant made a material representation regarding a past or an existing fact.  It must allege that the statement was false.  It must allege that when the defendant made it he knew that it was false, or made it recklessly.  It must allege that the defendant made it with the specific intent that the plaintiff rely on it.  And it must allege that the plaintiff did in fact rely on it, and suffered damages as a result.

Here, the first amended complaint does not do this.  Consequently, it does not state a fraud claim on which relief may be granted.

## F

Count six seeks an inspection of the partnerships' books and records.  As presently pleaded, it states a claim on which relief may be granted.

Under Michigan law, partners are entitled to access the partnerships' books and records.  Mich. Comp. Laws § 449.19.  "The partnership books shall be kept," the Michigan Compiled Laws provide, "and every partner shall at all times have access to and may inspect and copy any of them."  *Id.*; see also § 449.20 ("Partners shall render on demand true and full information of all things affecting the partnership to any partner.").

Here, as noted, the first amended complaint alleges that Plaintiffs are partners in the three limited partnerships.  They therefore have a statutory right to inspect the books and records of the partnerships.

The first amended complaint alleges sufficient facts to entitle Plaintiffs to seek an inspection of the books and records.

## G

Finally, count seven asserts a claim for conversion.  As presently pleaded, however, it does not state a claim on which relief may be granted.

"There can be no conversion of money," the Michigan Supreme Court instructs, "unless there was an obligation on the part of defendant to deliver specific money to plaintiff."  *Garras v. Bekiares*, 23 N.W.2d 239, 242 (Mich. 1946) (ellipses omitted); *see generally* 1 Linda Miller Atkinson et al., *Torts: Michigan Law & Practice* § 3.103 (2d ed. 2000).  The Michigan Court of Appeals likewise cautions: "To support an action for conversion of money, the defendant must

have an obligation to return the specific money entrusted to his care." *Head v. Phillips Camper Sales & Rental, Inc.*, 593 N.W.2d 595, 603 (Mich. Ct. App. 1999) (citing *Check Reporting Servs., Inc. v. Mich. Nat'l Bank–Lansing,* 478 N.W.2d 893 (Mich. Ct. App. 1991)).   "The defendant must have obtained the money without the owner's consent to the creation of a debtor and creditor relationship." *Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc.*, 444 N.W.2d 210, 213 (Mich. Ct. App. 1989) (citing *Hogue v. Wells*, 146 N.W. 369 (Mich. 1914)).

Here, the first amended complaint alleges that Plaintiffs gave Defendants money, perhaps as much as $1.5 million.  *See* First Am. Compl. ¶ 37.  It does not, however, allege any facts suggesting that Defendants have an obligation to return the specific money entrusted to their care.   And it does not allege that Defendants obtained the money without Plaintiffs' consent — on the contrary, it alleges Plaintiffs "paid" Defendants.  *Id.* ¶ 22.

Consequently, the first amended complaint does not state a conversion claim on which relief may be granted.

## IV

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment or to dismiss (ECF No. 13) is **GRANTED IN PART AND DENIED IN PART**.

It further **ORDERED** that the first amended complaint (ECF No. 3) is **DISMISSED WITHOUT PREJUDICE**.

It further **ORDERED** that if a motion for leave to file an amended complaint is not filed on or before February 14, 2013, count one will be dismissed with prejudice, jurisdiction over the remaining counts will be declined, and the case will be dismissed.

It further **ORDERED** that the hearings scheduled on Plaintiffs' motion for appointment of a special receiver (ECF No. 33) and motion for attorney fees (ECF No.35) scheduled for February 28, 2013 are **CANCELLED**.

It is further **ORDERED** that Defendants' motion to limit discovery (ECF No. 20), Plaintiffs' motion for class certification (ECF No. 24), Plaintiffs' motion for appointment of a special master (ECF No. 33), Plaintiffs' motion for attorney fees (ECF No. 35), Defendants' motion to strike expert witnesses (ECF No. 40), Plaintiffs' motion to substitute parties (ECF No. 41), Plaintiffs' motion for leave to amend the complaint to add additional parties (ECF No. 42), Plaintiffs' motion to compel (ECF No. 44), and Plaintiffs' motion for a protective order (ECF No. 46) are **DENIED WITHOUT PREJUDICE AS MOOT**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: January 24, 2013

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 24, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS

---